Good morning, judges. My name is Dawn Valdivia. Pull the mic just a little closer to the mic or put it up, it's just hard to, it doesn't pick up all that well sometimes. My name is Dawn Valdivia from Quarles and Brady and I am representing the appellant, Mr. Pickett, who was appointed by this court as pro bono counsel. Mr. Pickett appeals two rulings from the district court. First, he appeals the order granting summary judgment and second, he appeals the order denying him relief under Federal Rule of Civil Procedure 60B. I will address the first, the denial of summary, the granting of summary judgment first. The district court's grant of summary judgment should be reversed because the court incorrectly applied the law. At the district court, Mr. Pickett sought relief for violation of his constitutional rights, specifically appellee's denial of his right of access to courts. To establish a violation of a right of access to courts, Mr. Pickett must establish he suffered an actual injury. The inability to meet a filing deadline or to present a non-frivolous arguable claim results in actual injury. The district court improperly concluded that Mr. Pickett did not suffer an actual injury because he did not show his frustrated claims were non-frivolous. Instead of analyzing Mr. Pickett's claims to determine whether they were arguable, the district court improperly stood in the shoes of the Arizona Supreme Court and analyzed the merit of Mr. Pickett's underlying claims. I have a preliminary question or a question that comes just slightly before that in the analysis. And that is, at least as I read it, the US Supreme Court has made it very clear that a petitioner in these circumstances must allege in his complaint and identify the underlying claims for which he would have sought review, in this case, in the Arizona Supreme Court. And his complaint doesn't do that. So one's left to guess. Well, that's true, Your Honor. However, it was clear when Mr. Pickett filed his response to the motion for summary judgment that he sought review of the appellate court's memorandum of decision. Additionally, the district court had the right under 29 U.S.C. 1915d to dismiss the case initially on the frivolous standard, but it did not. It allowed the case to proceed and it allowed the appellees to file a motion for summary judgment, allowed Mr. Pickett to file a response, during which time he did raise the issue, the issues that he sought to raise before the Arizona Supreme Court to challenge his conviction. So this is not like the Christopher Harbury case where the court was left to guess, where the claim was nearly unintelligible. This is a case where once the claim was identified, the court knew and appellees knew what Mr. Pickett was seeking review of. Let's suppose, let's take your mistrial claim that the testimony of the witness that you say would have been presented arguing that that statement about being fearful of revealing his address because of fear of retaliation against the defendant, or at least implied that. Let's assume for argument's sake that that is a non-frivolous claim. What is the relief you would seek if we were to agree with you on that claim? Well, Mr. Pickett is seeking monetary relief. So it would go back for a trial on whether, what would be the measure of damages? Would you then look at whether or not he was likely to prevail on that claim and therefore no harm, no foul? Well, to be honest, Mr. Pickett has not articulated that to me exactly. Well, it's just a question of what the law would be. In other words, what you say is he has not been given the opportunity to present that claim. So the threshold question is whether it's frivolous. Okay, we might agree that it's not frivolous, but it may be, if you apply a somewhat stricter standard, which you say the district court incorrectly applied, you look at it and you say, this is not a claim that's likely to prevail. And therefore, and he would have to prove that, would he not, to show he was damaged? Because it would be then the absence of any consequential damage. Well, in order to prevail at the district court level for a section 1983 for denial of access to courts, he wouldn't have to prove that he would have been successful on the underlying claims. No, but I'm saying, that's why I'm asking about the remedy. He'd go back, okay, now he gets his trial on damages. So the damages against the people who withheld his files and whatever, and denied him the opportunity to have his day in court, which I understand, he wants monetary damages, okay. And would he essentially have to prove that in fact, losing out on his day in court actually produced a result that he would have otherwise obtained favorably. He might've gotten a mistrial, but wouldn't the court, in other words, if he were to prevail, let's suppose it was a very, very strong claim. If he got a mistrial, if he would have had a mistrial upheld and, you know, and therefore it'd be entitled to a whole new trial, then he might have substantial damages, I take it. He could show that he spent all this time in prison and so on and so forth. Yes. But if he can't show, even if he got to the court, he would have, that one statement by that one witness would not have been a basis for a mistrial. No court's going to find that. Then what would his damages be? Well, if it were just that one statement, I mean, Mr. Pickett was appealing five. No, I understand, but I'm just saying, let's assume that's the only one that's not frivolous. Well, then I think he would, if that was the only claim that he could show that was not frivolous, I think that he would not be able to show that, but for that one particular non-frivolous claim,  and had a lesser time in prison. Would he have any ability to go back on that claim and say that he has incurred the cost of bringing all of this collateral litigation? Are there costs that he might recover? Yes. And I think that he, yes, he would be able to argue some costs. And he seeks, he would argue monetary relief for the law. Well, I see what you're saying. Yes, he would seek some costs. And if I've got it right, what he would have done, the Arizona Court of Appeals affirmed, he made a motion to reconsider, which raised two grounds in the Court of Appeals. Then what he wanted to do was to petition the Arizona Supreme Court for discretionary review, right? Yes. So what we're talking about is a discretionary review by the Arizona Supreme Court that he would, if his access to the courts were denied, he would have to show that the Arizona Supreme Court was likely to take up and reverse. Yes. Okay. All right, do you want to save your time? Yes, I will. Thank you. Your Honors, may it please the Court, Paul Carter from the Arizona Attorney General's Office representing six officials of the Arizona Department of Corrections. We're here to request that you affirm, obviously, what happened below. Judge Reimer had it absolutely right that Christopher v. Harbury does put a pleading requirement on setting forth a non-frivolous or arguable claim. The failure to do so in this case certainly denied defendants fair notice of the nature of his claim, and in fact is probably the reason that the district judge ended up trying to execute. But unfair, this was decided on summary judgment, wasn't it? That's correct. That's correct, Your Honor. How was it unfair to you? By the time the judge ruled a summary judgment, you certainly knew what the plaintiff's story was, right? To an extent, Your Honor, but it was never really articulated either in his pleadings or in his subsequent filings. It ended up being the district court had to rely on the court of appeals decision and essentially divine what the argument would be that would render these arguments. Clearly, even if we were to say that the district court didn't have to do that, it did. And how were you prejudiced? Well, perhaps not prejudiced directly, Your Honor. I mean, I would agree with Your Honor that the court below did not have to do that analysis and that it could have summarily dismissed the action. It chose not to. And that's exactly why we're in this situation of having the plaintiff argue that they shouldn't be getting into the merits of the matter. The fact was that there was no way to assess the non-frivolousness or arguability of the claim without getting into the merits to some degree to place some of these bald-faced arguments like permissive jury instructions, mistrials. You have to put that in some kind of context. And the only thing that was available to the district court was to look at that decision. Help me out on this, if you would. Judge Rimer noted that the Arizona Supreme Court has a discretionary jurisdiction. How does that factor play into the case from your perspective? It's a matter we haven't really presented on appeal, and there was a changing in the law in the Ninth Circuit at that time. Since it was a discretionary appeal, it was at that point it was more a matter of setting himself up to file a Federal habeas action. He believed he had to file his Arizona Supreme Court discretionary appeal in order to be able to get to federal court, whereas, in fact, subsequent case law, I believe the decision's called swoops, said that was not necessary. So once again, we believe that the district court perhaps went too far. But again, the case law does suggest that the district courts are allowed to rely on the decisions of the state court. So in that sense, perhaps it was just trying to make sure it had the arguments before it put it in some context. And because there really was no argument of, you know, putting it into that context from Mr. Pickett, essentially it was just establishing that there was nothing there. Mr. Rollins, I realize this has nothing to do with the legal issue that we have to decide. But what was going on in the prison? I mean, it appears as if the prison authorities were ignoring their own rules about when to return a prisoner's materials once he'd been transferred. And, you know, it seems — I understand that it's — you can blame — you can blame or the prison people can blame Pickett, in part, for not telling him — just saying I've got a deadline and not telling him when. And his own conduct got him into more difficulty, but quite a bit later. Up until then, he was promised his stuff back within two or three days, didn't get it, nor did he get a pen and pencil — pen and piece of paper so he could communicate with the court. So what's going on? I understand your concerns, Your Honor, and I must respectfully disagree. And the key in looking at this is to really get the chronology right. When he's first told he's going to be moved, it's the Monday before Thanksgiving.  and then he's told he's going to be moved, it's the next day before Thanksgiving. So essentially, that gives only three workdays until he has his brief due. He's essentially, if he does not have his brief drafted by then, he's already late because he needs three days to get it reviewed and authorized for copying and three days to get it copied.  I think it's a question of the time he's in jail, and I think it's a question of the time he's in prison. Well, I understand that, and I'm trying in a way to put that aside. What I'm really asking, as I said, I understand it's not the actual question we have to decide. Yeah. But regardless of when his brief was due, doesn't — isn't the prison supposed to return his stuff within several days? If there's been a — To make available at least pencil and paper? Well, he obviously did have pencils and paper because he was able to file these inmate letters, or at least prepare them. And here's where the problem arises, Your Honor. And we did — there was a lengthy two or three years' worth of this case where they tried to determine whether he had exhausted administrative remedies. The court, in denying our motion, determined that we had not proved or disproved the negative. We had not been able to disprove that he had submitted these records. So here we are on appeal, and we still don't really have proof that these documents were ever submitted. We have the representations that there were oral communications, none of which specified a deadline. But the papers themselves, I don't believe there's been anything that has established that those were actually submitted. But for purposes of appeal, we're assuming that they were. What I'm just pointing out to you as the captive who is representing the state of Arizona and its prison system in this thing is that it doesn't sound very good to tell a guy that he's going to get his stuff back, whatever his stuff is, whether it's legal or just junk.  back, whatever his stuff is, whether it's legal or just junk. But they tell him he's going to get his stuff back in two or three days, and he gets it back six or seven months later. Something, something sounds awry in that system, and it might not be a bad idea to communicate that concern back to your folks. I think that's a point taken, Your Honor. And if I may, that first conversation with Officer Kyle, oral communication and we have the old adage in prison, if it's not written down, it didn't happen. So Officer Kyle says, send me an inmate letter, tell me what the deal is so I can act on it. He does not even write that inmate letter until three days later, November the 27th, Thanksgiving. So whether Officer Kyle received it Thanksgiving the day after or the day the petition is due, we don't really know. But the fact remains, he has never even come forward with any, where is this petition? I mean, he needed to have that prepared and getting it copied and ready to go by then. It doesn't ---- It's missing the point. The point is there's no dispute that there were files, as I understand it, that were ultimately returned. Correct. Correct. That is correct. And it took nine months to get them. Your Honor, it's not really in the record. And again, I'm ---- You know, okay. The point is, if we were arguing, if he were able to go to court perhaps and say, look, I got them back five days after I requested them, so on and so forth, then he'd be arguing to the district court why he should be held liable for lack of diligence. But instead, what you've got is the prima facie case that the prison didn't give him his materials for nine months. And that on its face raises a question. I think that's what Judge Rimer's questioning. And if you're saying, well, that's not true, there's some reason for his not getting them for nine months, fine. Then that's the point. But if there isn't a reason to come back and say, well, no harm, no foul, doesn't address the underlying problem. Because if there's a problem, there will be a prisoner case that we'll have to deal with, the district courts will have to deal with, where there may be a foul. And, you know, we get enough of these prisoner cases in the administration of the prison routines, there are consequences to the justice system. So you can take it back for what it's worth and say, look, if there's a problem, we should deal with it. And if there isn't, at least we've addressed it. I absolutely understand, Your Honor. And if I may address it two ways. One is, we really were only looking at matters that happened before his due date in discovery. And in that sense, since he did not specify his due date, it is a no harm, no foul, because there's nothing we could have done to help him. As far as what happened in the eight or nine months later, I don't know whether he ever actually formally requested a return of those files. It's simply not in the record. You know, he says he submitted these inmate letters. We essentially acknowledged that for purposes of the appeal. But if we go deep back into this case. I'm going to ask you, Mr. Carter, before you sit down, may I ask you very briefly if you could tell me why the mistrial issue and the suggestive identification issue are frivolous? Again, as I attempted to touch on earlier, these matters have to be put in context. Merely labeling something does not make it so, and it certainly doesn't make it frivolous or not frivolous. The improper identification by a witness, that testimony was stricken from the record. Without any argument to the contrary, by he essentially waived, he didn't, on that issue he didn't waive it, but essentially it was stricken. That was a reasonable response. There being nothing to the contrary submitted by Mr. Pickett, I mean, that's as much as the district judge or the, right, the district judge could have done. And as far as the, I think you also inquired as to the Desereau hearing, that's a matter where the identification is State-initiated, and here it's quite clear that it was contact with a witness that was initiated by Mr. Pickett who was representing himself. And in that sense, Desereau just doesn't fit. We have to look at whether there's a reasonable basis in law and fact for it to be non-frivolous. I understand the opposition says that was not a voluntary confrontation with the witness. Is that correct? The opposition? I'm sorry. The counsel for the petitioner says, or for the plaintiff, says that that confrontation with the witness was not a voluntary one on his part. The only evidence I'm aware of is that he requested an interview with a witness and was allowed that opportunity. So in that sense, it's not a State-initiated contact. Well, perhaps we'll hear from the other side on that, too. Thank you. Very good. Thank you, Your Honors. It's my understanding from the record, Judge, that Mr. Pickett requested to interview the witness and was not given that opportunity. But the Court did order for the witness to be interviewed by Mr. Pickett, but instead a designated person was – somebody was designated to interview the witness, and Mr. Pickett was not allowed that opportunity. To address your last question, that was my understanding. And what about the mistrial? His response on the mistrial? Well, again, I think that, again, those issues with regard to the – go to the validity of Mr. Pickett's underlying petition. And that goes – I understand that that goes to the second prong of what remedy can he show? He has to show he has a non-frivolous claim, and then he has to show that he can get a remedy for that. Again, as argued in the briefs, he did show his claim for non-frivolous. As far as the remedy goes, Mr. Pickett, again, is seeking – to the extent that he could succeed on those – that he could show that he could have succeeded on the mistrial, then his remedies would be expanded – his monetary remedy would be expanded for the time that he has served in prison. To the extent he cannot, he does have remedies in the form of costs. I want to make one other quick point about counsel's representation that it's – Mr. Pickett's grievances are not in the record. There are numerous grievances in the record, and the facts are undisputed that Pickett – Mr. Pickett told Defendants Kyle and Reed and Hughes that he needed his legal property, that he had an impending deadline. There's no dispute. Kyle did not dispute that she was told that. And she does not dispute that she told him that he would get it back in two or three days. In fact, that had happened just six months earlier when he was transferred to CB-6, where the death row inmates were housed. So I would point to you to – specifically to the excerpt of record at 155, 156, 157, and 158, and 159, which all list and discuss the grievances, the numerous grievances that Mr. Pickett filed regarding the return of his property. And this argument about he had pencils and paper, he was given grievance forms. Okay. Okay. All right. Thank you very much, counsel. We appreciate your appearing pro bono. Pickett is submitted.
judges: Ripple, Rymer, Fisher